IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-002107-PAB-MJW

JOHN DAVIS,

    Plaintiff,

v.

CITY OF AURORA, a Home Rule Municipality,
by and through its governing body the City Council,
DANIEL J. OATES, individually and in his official capacity as Chief of Police,
ED TAUER, individually and in his official capacity as Mayor,
DANIEL BYRD, individually,
ERIC BUGGE, individually,
JEREMY SEXTON, individually,
GENNIFER WOLF, individually,
JILL BILL, individually,
MICHAEL WOODYARD, individually, and
DONALD AINSWORTH, individually,

    Defendants.

_____

## ORDER ON MOTION TO DISMISS
_____

This case involves the alleged unlawful detention of plaintiff John Davis by Aurora Police Department officers in response to a burglary report from defendant Donald Ainsworth.  The matter is before the Court on defendant Donald Ainsworth's motion to dismiss [Docket No.115] plaintiff's second amended complaint [Docket No. 111].  The Court's subject-matter jurisdiction is founded upon the existence of federal questions, as contemplated by 28 U.S.C. § 1331, and the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.

**I. BACKGROUND**

    **A. <u>Brief Factual Background</u>**

A more complete recounting of the facts which prompted this case can be found in the Court's March 31, 2010 order addressing Mr. Davis' claims against the Aurora Police Department defendants. *See* Docket No. 85 at 2-5. For purposes of the present motion, the following relevant facts are alleged in plaintiff's Second Amended Complaint [Docket No. 111]:

Plaintiff John Davis is a black male in his fifties who resides in Aurora, Colorado. Just before noon on October 2, 2006, Mr. Davis, who is a licensed real estate broker associate, previewed a house located at 3697 South Cathay Circle in Aurora for a potential showing to clients. Mr. Davis is a resident of this neighborhood. Most of his neighbors are white.

The house at 3697 South Cathay Circle was publicly listed for sale; it had a "for sale" sign prominently displayed in the front yard, there was a lockbox containing a key so prospective agents and buyers could access the home, and the owners had vacated the premises, leaving only "staging" furniture. Prior to arriving at the South Cathay Circle property on October 2, 2006, Mr. Davis contacted the listing real estate broker and obtained permission to enter the home and the lockbox code which allowed him to access the keys to unlock the doors. Between 11:00 a.m. and 11:50 a.m., dressed in what he describes as "casual-professional dress" – "a sports shirt and casual pants" – plaintiff left his home and walked approximately one block to the house at 3697 South Cathay Circle. As Mr. Davis approached the house, he did not have any tools in his

possession that might suggest a burglary. Mr. Davis entered the code into the lockbox, retrieved the key, unlocked the front door, and entered the home. Plaintiff estimates that he spent five to ten minutes previewing the house and making mental notes to himself about the property.

While Mr. Davis was inside the home, defendant Ainsworth, who apparently resides across the street from the property Mr. Davis was previewing, called the Aurora Police Department to report that a black male was burglarizing the house at 3697 South Cathay Circle. Mr. Davis alleges that Mr. Ainsworth has not called the police on white real estate agents and that his false report regarding Mr. Davis was motivated by racial bias and Mr. Ainsworth's desire to keep black individuals from purchasing the house. Upon leaving the house, Mr. Davis was detained and questioned at gunpoint by Aurora police officers.

### B. Procedural Background

Mr. Davis filed his complaint in this action on September 30, 2008, which he later amended on December 12, 2008 and amended again August 24, 2010. The second amended complaint asserts seven claims and names ten defendants: the City of Aurora, Daniel J. Oates, Ed Tauer, Daniel Byrd, Eric Bugge, Jeremy Sexton, Gennifer Wolf, Jill Bill, Michael Woodyard, and Donald Ainsworth. Plaintiff's fifth claim for relief alleges that defendant Ainsworth intentionally made a false report to the police that plaintiff was burglarizing a home in order to dissuade black persons from purchasing or living at that location, in violation of 42 U.S.C. § 1982. His sixth claim alleges that Mr. Ainsworth's actions amount to the intentional or reckless infliction of emotional distress

by Mr. Ainsworth. Mr. Davis' seventh claim asserts that Mr. Ainsworth's actions are actionable under a claim for outrageous conduct.

On September 10, 2010, Mr. Ainsworth filed a motion to dismiss all three of the claims Mr. Davis asserts against him. Mr. Ainsworth first argues that Mr. Davis has failed to state a claim under § 1982 and that, as a result, dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. Ainsworth's motion raises a narrow legal issue, claiming that § 1982 is inapplicable to the facts of the present case. Mr. Ainsworth also appears to question the Court's subject-matter jurisdiction by claiming that Mr. Davis lacks standing to assert a § 1982 claim. Finally, Mr. Ainsworth argues that the Court should decline supplemental jurisdiction over and dismiss Mr. Davis' two state-law claims.

## II. ANALYSIS

Mr. Ainsworth's motion to dismiss purports to be a motion pursuant to Federal Rule of Civil Procedure 12(b)(6); however, it was filed after Mr. Ainsworth answered the complaint. *See* Docket No. 113. Despite this timing, Mr. Ainsworth has not waived his argument that plaintiff has failed to state a claim under § 1982, nor has he waived his argument that plaintiff does not have standing to bring a § 1982 claim. *See* Fed. R. Civ. P. 12(h)(2) - (3) (failure to state a claim may be raised in a Rule 12(c) motion and lack of subject-matter jurisdiction may be raised at any time). Thus, Mr. Ainsworth's motion is more appropriately treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 n.5 (10th Cir. 1998) (because defendants filed their Rule 12(b)(6) motion

after they filed their answer, their motion may be treated as one for judgment on the pleadings). Nonetheless, this distinction has little relevance here, as the same standard applies to a Rule 12(c) motion seeking dismissal for failure to state a claim as would apply if it were a Rule 12(b)(6) motion. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002).

Mr. Ainsworth argues that Mr. Davis lacks standing to bring a § 1982 claim and, as a result, the Court lacks subject-matter jurisdiction over the claim. His motion, however, seeks dismissal under Rule 12(6)(6) for failure to state a claim rather than Rule 12(b)(1), the typical method of challenging the Court's subject-matter jurisdiction. The distinction between the rules often does not matter because the manner in which a party challenges the Court's subject-matter jurisdiction and even the fact of such a challenge are inconsequential. *See City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078-79 (10th Cir. 2009) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990))). Here, the interplay between Rule 12(b)(1) and Rule 12(b)(6) becomes somewhat more significant because, where subject-matter jurisdiction is closely intertwined with the substantive claims, the case is best resolved on the merits. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "When subject-matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987). Mr.

Ainsworth's motion argues that Mr. Davis lacks standing to bring a § 1982 claim because Mr. Davis has not identified an interest in real or personal property which he was inheriting, purchasing, leasing, selling, holding, or conveying, as required by the statute. Therefore, because Mr. Ainsworth's argument depends on an interpretation of § 1982, the question is best addressed on the merits. To the extent that Mr. Davis attempts to raise the interests of third parties, that is, his real estate clients, questions of standing are still implicated and will be addressed below.

### A. Legal Standard – Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For a complaint to state a claim, it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Rule 8(a)'s "short and plain statement" mandate requires that a plaintiff allege enough factual matter that, taken as true, makes his "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210,

1215 (10th Cir. 2007). At the same time, however, a court need not accept conclusory allegations in the complaint. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (omission marks omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson*, 534 F.3d at 1286.

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alteration marks omitted).

### B.  The Adequacy of Mr. Davis' Statement of His § 1982 Claim

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982 (2006). In his second amended complaint, Mr. Davis alleges that Mr. Ainsworth violated § 1982 by calling the

police out of a desire to prevent a black person from purchasing or living in the residence at 3697 South Cathay Circle. *See* Docket No. 111 at 19. Nowhere in the second amended complaint does Mr. Davis describe a property right of his own which is at stake.

While courts have read § 1982 broadly in order to effectuate Congress' intent in eliminating race-based discrimination, the statute remains tethered to its original goal: protecting "the right of black persons to hold and acquire *property* on an equal basis with white persons and the right of blacks not to have *property interests* impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981) (emphasis added). Courts have taken an expansive view of who may bring a claim to protect and what interests are protected. *Greene*, 451 U.S. at 120 ("To effectuate the remedial purposes of the statute, the Court has broadly construed this language to protect not merely the enforceability of property interests acquired by black citizens but also their right to acquire and use property on an equal basis with white citizens."). For example, courts have held that various individuals whose property interests were impaired but did not belong to a protected class had standing under § 1982 through their affiliation with individuals who were members of a protected class. *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969); *New West, L.P. v. City of Joliet*, 491 F.3d 717, 720 (7th Cir. 2007); *Homan v. City of Reading*, 963 F. Supp. 485, 491 (E.D. Pa. 1997). Furthermore, a wide array of interests qualify as "property interests" for purposes of § 1982. *See Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 436-37 (1973) (rights to certain swimming club memberships); *Wieczorek v. Red Roof Inns, Inc.*, 3 F. Supp. 2d 210 (N.D.N.Y. 1998) (hotel stay); *Harary v. Allstate Ins.*

*Co.*, 983 F. Supp. 95, 99 (E.D.N.Y. 1997) (rights under insurance contract); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.*, 759 F. Supp. 1339, 1350 (W.D. Wis. 1991) (usufructuary fishing rights); *but see Greene*, 451 U.S. at 124 (limited access to a particular street "does not involve any impairment to the kind of property interests that we have identified as being within the reach of § 1982"); *Perry v. Burger King Corp.*, 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (use of restaurant bathroom not a property right protected by § 1982).

Despite these broad readings of the property interests protected by § 1982, the Court is not aware of any case that found interests analogous to those asserted by Mr. Davis to qualify as property rights under § 1982. The second amended complaint appears to contend that Mr. Ainsworth's actions against Mr. Davis impaired Mr. Davis' ability to market the property to potential black buyers. But Mr. Davis' interest in the prospective business opportunity of assisting those buyers in the purchase of 3697 South Cathay Circle does not qualify as a property right and, therefore, does not fall within the purview of § 1982. Furthermore, the Supreme Court has noted that "[§ 1982] does not refer explicitly to discrimination . . . in the provision of brokerage services"; rather, Congress has provided other potential mechanisms for a broker to challenge discriminatory acts. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 & n.10 (1968) (citing § 806 of the Civil Rights Act of 1968, codified at 42 U.S.C. § 3606 (2006), and 42 U.S.C. § 1981). Based on the foregoing discussion, the Court concludes that Mr. Davis has failed to state a claim under 42 U.S.C. § 1982.

### C. Mr. Davis' Standing to Assert the Rights of His Clients

Mr. Davis' second amended complaint can also be read to seek to vindicate the property rights of his clients. However, to the extent that one reads it that way, Mr. Davis faces insurmountable standing problems. "The standing inquiry requires us to consider 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Sac & Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). In order to show constitutional standing, a plaintiff must demonstrate three things:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."

*In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1101 (10th Cir. 2001) (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993)).

"In addition to satisfying the prerequisites for constitutional standing, a plaintiff must also meet, generally speaking, the requirements of prudential standing, a judicially-created set of principles that, like constitutional standing, places 'limits on the class of persons who may invoke the courts' decisional and remedial powers.'" *Board of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quoting *Warth*, 422 U.S. at 499). Failure to satisfy the requirements of prudential standing may bar a plaintiff's claim, irrespective of whether constitutional

standing exists. *Id.* Like constitutional standing, prudential standing presents three conditions that must be met:

> First, a plaintiff must assert his own rights, rather than those belonging to third parties[;] Second, the plaintiff's claim must not be a "generalized grievance" shared in substantially equal measure by all or a large class of citizens[;] Third, prudential standing requires that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.

*Id.* (citations and quotation marks omitted).

"It has been held that 'prudential limitations on standing ordinarily require that an action under sections 1981 or 1982 be brought by the direct victims of the alleged discrimination because they are best situated to assert the individual rights in question.'" *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002) (quoting *Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 721 (D.C. Cir. 1991)) (alteration marks omitted). Therefore, even if Mr. Davis' clients could seek relief under § 1982 because they attempted to purchase the house at 3697 South Cathay Circle, Mr. Davis is unable to assert a claim on their behalf.

The Tenth Circuit opinion in *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065 (10th Cir. 2002), is instructive. In that case, a woman of Ethiopian descent and the corporation she operated brought suit under 42 U.S.C. §§ 1981 and 1982, claiming that the defendant landlord and property owner discriminated against them based on race during negotiations regarding the leasing of retail space. The Tenth Circuit held that, because plaintiff corporation was the party with whom the lease and related contracts would be signed, the corporation was the injured party. Conversely, because the individual plaintiff was not personally seeking to contract with

or lease space from the defendant, she did not have standing to assert a claim under § 1981 or § 1982. The Court held that the individual plaintiff "suffered no violation of her contract rights or right to lease that was in any way different from the violations claimed by [the corporation]." *Guides, Ltd.*, 295 F.3d at 1072.

*Guides, Ltd.* makes clear that in order to assert a claim under § 1982 a plaintiff must have suffered an injury to his or her own property rights. It also demonstrates that prudential standing doctrines will prevent a plaintiff from bringing a claim that merely seeks to assert the rights and injuries of an affiliated party. In terms of the present case, *Guides, Ltd.* prevents Mr. Davis from asserting a claim against Mr. Ainsworth for damages suffered by Mr. Davis' clients as a result of Mr. Ainsworth's actions. Although Mr. Davis' clients could potentially have brought a § 1982 claim for the injury they suffered as a result of the discriminatory animus directed at their real estate broker, Mr. Davis cannot assert those rights for them, as he lacks the prudential standing to do so.

### D. Supplemental Jurisdiction

In cases such as the present one, where federal questions are the basis for original jurisdiction, the supplemental jurisdiction statute provides that

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (2006). The statute leaves the exercise of supplemental jurisdiction to the district court's sound discretion:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district

> court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2006). Mr. Ainsworth seeks dismissal under § 1367(c)(3), which allows the district court to dismiss state law claims after it "has dismissed all claims over which it has original jurisdiction." *Id.* But the Court has not dismissed all the federal claims in this case; rather, Mr. Davis retains his federal claims against the defendants other than Mr. Ainsworth. Moreover, Mr. Davis' state law claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (2006). "A claim is part of the same case or controversy if it 'derives from a common nucleus of operative fact.'" *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)) (internal quotation marks and alteration marks omitted). Here, all of Mr. Davis' claims against all of the defendants derive from a single event that took place on South Cathay Circle on October 2, 2006. Therefore, the Court retains supplemental jurisdiction over Mr. Davis' state law claims against Mr. Ainsworth. *See Sparks v. Reno Cnty. Sheriff's Dept.*, 2004 WL 1664007 at *3 n.6 (D. Kan. July 26, 2004); *cf. Faragalla v. Douglas Cnty. School Dist. RE 1*, 411 F. App'x 140 (10th Cir. 2011) (rejecting plaintiff's argument that district court retained supplemental jurisdiction over state law claims based on remaining federal claims against other defendants where district court had in fact dismissed all federal claims).

Furthermore, the interests of judicial economy, convenience, fairness, and comity weigh in favor of an initial exercise of supplemental jurisdiction over Mr. Davis' state-law claims against Mr. Ainsworth. The facts of the state-law claims are closely

intertwined with the remaining claims against the Aurora Police Department defendants. Therefore, the Court concludes that judicial economy and fairness militate in favor of the ongoing retention of jurisdiction over Mr. Davis' state-law claims against Mr. Ainsworth.  Mr. Ainsworth's motion to dismiss in this regard is denied.

### III.  CONCLUSION

In accordance with the foregoing, it is

**ORDERED** that defendant Donald Ainsworth's motion to dismiss [Docket No. 115] is **GRANTED** in part and **DENIED** in part.  Plaintiff John Davis' fifth claim for relief is **DISMISSED**.  Plaintiff John Davis' sixth and seventh claims for relief may proceed.

DATED July 14, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge